UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES**                   )
                                    )
**v.**                              )
                                    )
**STEVE NOLTE,**                    )     **Criminal No. 13-cr-10247-DJC**
                                    )
**Defendant.**                      )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                          **January 28, 2021**

### I.   Introduction

Petitioner Steve Nolte a/k/a George France ("Nolte") has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2255 raising grounds to challenge his conviction.  D. 164.  Nolte subsequently moved to amend the Petition, D. 172, which is not opposed by the government.  D. 177 at 1.  The government has moved to dismiss the amended Petition.  D. 177. Since, for the reasons articulated by the government, the Court concludes that each of these grounds is time barred and/or procedurally barred and, alternatively, fails on the merits, the Court ALLOWS the government's motion to dismiss, D. 177, and DENIES the amended Petition.  D. 164, 172.

### II.   Discussion

#### A.   Standard of Review

Pursuant to 28 U.S.C. § 2255, an individual may move to vacate his sentence if such "sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to

1

collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  Under § 2255(f), a habeas corpus petition filed by a prisoner in federal custody is subject to a one-year statute of limitations period that runs from the latest of four possible dates, only one of which, "the date on which the judgment of conviction becomes final," is relevant here.  28 U.S.C. § 2255(f)(1).  The burden is on the petitioner to make out a case for § 2255 relief.  David, 134 F.3d at 474.  A petitioner raising claims of error for the first time in a § 2255 petition must show both "cause" excusing his procedural default in not raising the issue before and "actual prejudice" resulting from the alleged error.  Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense" prevented the petitioner from having raised the claim earlier.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Even, however, if a petitioner shows cause for his procedural default, he still must show "actual prejudice" from the alleged error for his § 2255 claim to be cognizable.  To meet this standard, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Frady, 456 U.S. at 170 (emphasis in original).

### B.    The Amended Petition is Untimely

The amended Petition is untimely.  Nolte was convicted on March 6, 2015, after a jury trial, of making false statements in a passport application (Count I), aggravated identity theft (Count II) and use of a falsely obtained social security number to obtain benefits (Count III).  D. 115.  These charges arose out of Nolte's use of the identity of another person, George France, and there was evidence presented at trial that he began to do so in 1997 to avoid prosecution for stealing

over $500,000 from Fulton Homes, a company for which Nolte had provided services.  D. 143 at 137-38, 142-43; D. 177 at 1-2.  On June 29, 2015, this Court sentenced Nolte to three years imprisonment (twelve months on Counts I and III to be served concurrently and two years on and after that sentence on Count II) and two years of supervised release.[1]  D. 136.  In his appeal, he challenged his conviction on Count II, the aggravated identity theft charge, and the application of a four-level enhancement at sentencing.  D. 177 at 2; D. 164 at 3-4.  The First Circuit affirmed his conviction and sentence on December 20, 2016.  D. 158.  Nolte's petition for certiorari was denied on October 2, 2017, D. 162, and, therefore, his judgment became final as of that date.

The government does not dispute that the original Petition, D. 164, filed on October 1, 2018, was timely, but none of the grounds that he asserts in the amended Petition relate back to that original Petition and, therefore, are untimely.  In the original Petition, Nolte sought appointment of counsel; transcripts and other documents; and permission to amend the Petition. D. 164 at 7.  The amended Petition, filed on January 8, 2019, identified nine grounds, none of which were identified in the original Petition.  D. 172.  These grounds include alleged errors at trial (Grounds One, Two and Six); claims of ineffective assistance of counsel (Grounds Three, Four, Five and Seven); discovery of "new evidence" (Ground Eight);[2] and the cumulative effect of the other errors (Ground Nine).  D. 172 at 19.

---

[1]Although Nolte has already served his federal sentence and is serving a state sentence in Arizona for charges relating to the Fulton Homes theft, the government treated him as "in custody" for the purposes of moving to dismiss the amended Petition since he still faces a two-year term of supervised release once released from state custody.  D. 177 at 3 n. 1 (citing cases).  The Court does the same here.

[2]The reliance upon alleged "new evidence" does not trigger a later statute of limitations date under Section 2255(f) since, as the government points, any alleged new evidence arose during Nolte's state trial in Arizona in 2016, before the denial of his petition for certiorari in October 2017.  D. 177 at 5 n.4.

For an amended petition to be timely, it must relate back to the date of the original petition. Fed. R. Civ. P. 15(c)(2); see United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005) (noting that Rule 15 governs amendments to habeas petition). Under Rule 15, a claim to be added must arise out of the conduct, transaction or occurrence asserted in the original pleading. "Accordingly, amended habeas corpus claims generally must arise from the 'same core facts,' and not depend on events that are separate both in time and type from the events upon which the original claims depended." Ciampi, 419 F.3d at 23 (internal citation omitted). None of the nine grounds relate back to the limited grounds asserted in the original Petition. Although Nolte vaguely noted that his conviction and sentence were "under attack" in the original Petition, D. 164 at 2, that invocation was insufficient to raise the panoply of issues he subsequently asserted in the untimely, amended Petition. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Accordingly, all of the grounds in the amended Petition are untimely.

### C.   Even if Not Untimely, Some of the Grounds are Procedurally Barred

Even if they were not untimely, Grounds One (reasonable doubt instruction), Two ("prejudicial matters and theories" raised during trial) and Six (alleged prosecutorial misconduct during closing argument) still must be dismissed because they are procedurally barred. None of these issues were raised during Nolte's direct appeal and only the reasonable doubt instruction drew objection during trial. D. 177 at 7 (citing trial transcript). Accordingly, these claims are deemed waived, United States v. Bucci, 662 F.3d 18, 29 (1st Cir. 2011), unless Nolte can show cause for his procedural default and actual prejudice, Bousley, 523 U.S. at 622, or actual innocence. Id. He has not made such showing here and, accordingly, these grounds are procedurally defaulted and dismissal of them is warranted on this basis as well.

Even reaching the merits of these claims, however, Grounds One, Two and Six fail.  As to Ground One, Nolte complains that the reasonable doubt instruction failed to include a definition of reasonable doubt.  D. 172 at 2-3.  The Court properly instructed the jury repeatedly that the government's burden of proof as to each of the counts was proof beyond a reasonable doubt and it is well settled that "reasonable doubt does not require definition."  United States v. Herman, 848 F.3d 55, 56 (1st Cir. 2017); see Victor v. Nebraska, 511 U.S. 1, 5 (1994).  As to Ground Two, to the extent that his claim that "prejudicial matters and theories," D. 172 at 6-7, 13-14, were introduced at trial is even fully articulated, the ground is meritless.  Whatever evidence or charges the state of Arizona may not have pursued at his later 2016 trial regarding the 1997 Fulton Homes theft, none of the evidence introduced during his trial in this matter was unduly prejudicial under Fed. R. Evid. 403 or otherwise improperly admitted as it was probative of Nolte's culpability on the charged crimes in this case.  D. 177 at 9 n.6.  As to Ground Six, as to alleged prosecutorial misconduct, this ground also fails.  Nolte challenges several statements made in the closing and rebuttal arguments by the prosecutors as improper vouching, relying upon personal opinion and/or invading the province of the jury.  D. 172 at 11-13, 17-18.  None of the statements made by the prosecutors, particularly when viewed in the context of the entirety of the argument, were improper.  The arguments permissibly reiterated that the government proved the case it told the jury that it would in its opening statement, presented the reasonable inferences and conclusions that the government contended the jury should draw from the evidence and appealed to the jury's common sense about doing so.  D. 177 at 11-18 (discussing each of the comments that Nolte challenges and applicable case law).  None of these statements alone or cumulatively were improper and, therefore, Ground Six of the amended Petition also fails on the merits.

### D.  **Even Assuming No Procedural Bar as to the Other Grounds,  They Also Fail on the Merits**

Even if the remaining Grounds (Three, Four, Five, Seven, Eight and Nine) are not procedurally barred, they fail on the merits.

   1.   *Grounds Three, Four, Five and Seven—The Ineffective Assistance of Counsel Claims*

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, Nolte must show that his "counsel's representation fell below an objective standard of reasonableness" and that such deficiency prejudiced him.  Strickland v. Washington, 466 U.S. at 688, 692 (1984).  As to the first prong of Strickland, the performance prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996).  An attorney's performance is deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it."  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted).  Even with a showing of such deficient performance, a petitioner may only prevail on his ineffective assistance claim if he satisfies the second prong of Strickland, the prejudice prong:  *i.e.*, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694.  This is a "'highly demanding' and 'heavy burden,'" meaning that "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Williams v. Taylor, 529 U.S. 362, 394 (2000) (quoting Strickland, 466 U.S. at 694).

Even assuming (without deciding) that counsel's conduct was deficient in the ways that Nolte alleges, all of his ineffective assistance of counsel claims fail because he has failed to show that but for this deficient performance, the result of the trial would have been different.  As to

Ground Three, even assuming any handwriting expert would have opined that Nolte was not the forger of the checks stolen from the Fulton Homes, D. 177 at 14-15, such evidence would not have refuted the government's evidence at trial.  The Fulton Homes theft was not an element of any of the crimes charged against Nolte in this case and was only offered as evidence of his motive to adopt the (false) new identity giving rise to the charges here:  his false statements on a passport application, aggravated identity theft and the use of a falsely obtained social security number to obtain benefits.  Given the substantial evidence of Nolte's guilt, the Court does not conclude any alleged failure to offer a handwriting expert opinion (even if Nolte had established what expert would have opined favorably in this respect) prejudiced him.

The same is true as to Ground Four in which Nolte contends that trial counsel was ineffective for failing to consult a "bank expert" who would have opined that there was no wire transfer to him in Costa Rica.  D. 172 at 15-16.  As with Ground Three, the evidence about the wire of funds was offered as evidence of Nolte's motive for the crimes he committed here.  There was also ample evidence offered at trial that the funds were stolen for Nolte's benefit (as he was signatory on the account that received the funds initially) and the money was wired in favor of Nolte.  D. 177 at 22 (citing exhibits admitted at trial) and Nolte's connection to Costa Rica was also established at trial.  D. 177 at 22 (citing trial exhibit).  That is, even if Nolte's counsel had offered such opinion at trial, the government's showing as to each of the elements of the crimes charged would not have been undermined and even its motive evidence on this point would not have been substantially weakened as there was evidence of his connection to the Fulton Homes theft.

As to Ground Five, there has been no showing of counsel's deficient conduct in failing to acquire a Tempe Police Department report, D. 172 at 16-17, as it was produced to Nolte's counsel

in this case.  D. 177 at 23 (attaching report, D. 177-1 at 6, produced in discovery).  Even assuming *arguendo* that there was somehow deficient performance in failing to use the report to impeach Joyce Nolte (Nolte's mother who testified that his true identity was Steve Nolte) as to the last date she saw her son, see D. 172 at 8-9; 185 at 4, such failure was not prejudicial.  Whether she last saw Nolte last in 1993 or 1996, the material issue was that she had not had contact with him since the Fulton Homes theft in May 1997, which as the government contended at trial, was when Nolte adopted the false identity of George France.  D. 177 at 23.

As to Ground Seven, D. 172 at 18, it was not deficient performance for Nolte's counsel not to object to the statements made by the prosecutors because, as discussed above, these statements were not improper.  Even if it were, Nolte has failed to show how he was prejudiced by his counsel's failure to object where, as discussed above, these statements were neither singularly nor cumulatively improper.  Accordingly, Ground Seven also fails.

2.   *Remaining Grounds*

As to Ground Eight, Nolte cites "the myriad of new evidence," D. 172 at 19, but fails to identify what evidence he relies upon, how it is new evidence (other than it seems to have arisen in the course of his 2016 state trial) or, as the government aptly puts it, "why that evidence would have been of consequence to his federal conviction or sentence."  D. 177 at 24.  For all of these reasons, both as a matter of waiver, Zannino, 895 F.2d at 17, or otherwise on the merits, Ground Eight fails.

Given that none of the other Grounds identify viable grounds for habeas relief, the "cumulative" effect of those errors, as alleged in Ground Nine, D. 172 at 19, fails as well.  United States v. Gonzalez-Melendez, 594 F.3d 28, 37 (1ˢᵗ Cir. 2010).

**III.     Conclusion and Certificate of Appealability**

For the reasons stated above, the Court ALLOWS the government's motion to dismiss, D. 177, and DENIES the Petition, as amended, D. 164, 172.

A petitioner may receive a certificate of appealability only if he has "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion.  Id.  Although the Court is not inclined to issue a certificate of appealability at this time, the Court will give Nolte until March 1, 2021, to file a motion for certificate of appealability addressing whether he seeks a certificate of appealability as to any of the grounds in the Petition and making the showing that such is warranted here.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge